1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 ### EASTERN DISTRICT OF CALIFORNIA

10

11 | | | |
|---|---|---|
| NANCY LYNN BERRIGAN, | ) | 1:10-cv-00165 GSA |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendants. | ) | |

16

17

18 ### BACKGROUND

19       Plaintiff Nancy Lynn Berrigan ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21 disability insurance and supplemental security income benefits pursuant to Titles II and XVI of

22 the Social Security Act.  The matter is currently before the Court on the parties' briefs, which

23 were submitted, without oral argument, to the Honorable Gary S. Austin, United States

24 Magistrate Judge.[1]

25

26 ──────────────

27       [1]The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 9 & 29.)

28                                                          1

## FACTS AND PRIOR PROCEEDINGS[2]

In December 2006, Plaintiff filed an application for disability insurance and supplemental security income benefits, alleging disability as of November 30, 2005.  AR 113–116.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 72-76, 80-86.  ALJ James P. Berry held a hearing on May 11, 2009, and issued an order denying benefits on July 22, 2009, finding Plaintiff was not disabled.  AR 11-17, 94-98.  Thereafter, on September 2, 2009, the Appeals Council denied review.  AR 2-5.

### Hearing Testimony

ALJ Berry held a hearing on May 11, 2009, in Bakersfield, California.  Plaintiff appeared and testified; she was represented by attorney James Yoro.  Vocational Expert ("VE") Kenneth Ferra also testified.  AR 18-42.

Plaintiff was born on August 23, 1965; she was forty-three years old on the date of the hearing.  AR 21.  After graduating high school, Plaintiff attended college for two years studying to become a paralegal, however, she did not complete the course or obtain a certificate.  AR 21-22.

Plaintiff last worked in July 2005 as an in home care provider, taking care of her bedridden mother.  AR 22-23.  Within the last fifteen years, Plaintiff has also worked providing care to her brother's children.  AR 23.  Additionally, Plaintiff worked for Kern County, and more specifically, "work[ed] for Judge Willis in the Fast Track program."  AR 23-24, 121-122.  The position was essentially a file clerk position; she worked for the county from 1985 to 1995.  AR 24.  Plaintiff has not worked since 2005.  AR 25.

Following her mother's death, Plaintiff's own health deteriorated.  Congestive heart failure keeps her from "doing pretty much anything."  AR 25.  She also suffers from diabetes, for

---

[2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

which she is insulin dependent.  AR 25.  In response to an inquiry about her blood sugars,
Plaintiff indicated they were not good, despite eating right.  AR 26.  She has been taking insulin
injections for a few years and also takes the oral medication, Metformin.  AR 26.

With regard to the treatment of congestive heart failure, Plaintiff takes "Lasix," and
another medication for hypertension.  AR 27.  Medication, diet and "walk[ing] a little bit every
day" were suggested by her doctor to treat congestive heart failure.  AR 36.  With regard to her
respiratory condition, Plaintiff uses a nebulizer three to four times a day on average, and also
uses an inhaler.  AR 28-29.  Each nebulizer treatment takes about ten minutes.  AR 29.  Plaintiff
uses the Albuterol inhaler "four or five, six times a day."  AR 29.  Walking will aggravate her
breathing problem.  AR 29.

Plaintiff's hands "crack and [] bleed," but the doctor has not yet diagnosed the condition.
AR 27-28.  She also suffers from numbness in her arms and legs.  AR 30.  When asked to
describe the sensation in her arms, Plaintiff replied that her arms are "just numb, can't hardly
squeeze my hands, real weak."  AR 31.  It feels like a "heaviness" that travels to her chest.  The
weakness affects her ability to use her hands and arms, and she has to take breaks.  AR 31.
Plaintiff does not "even try to lift anything," and estimated she could not lift more than five
pounds without "great chest pain."  AR 31.

When she was asked to estimate how long she could stand or walk, Plaintiff indicated she
takes pain medication for her hip, that she believes to be "disintegrating."  AR 32.  She estimated
she could walk through the grocery store, but indicated it was sometimes too much.  AR 32.
Asked what length of time or distance was entailed, Plaintiff indicated she could stand or walk
"five minutes at the most."  AR 32.  More particularly, when asked to estimate the total amount
of time she could stand or walk during an eight-hour day, Plaintiff indicated "maybe 30
minutes."  AR 32-33.  She cannot tolerate sitting for more than two hours because she gets
drowsy from the pain medication or gets "kind of fidgety."  AR 33.

1    Currently Plaintiff weighs about 280 pounds; she is five feet seven inches tall.  AR 29.

2  At its high point, Plaintiff's weight was 324 pounds.  She attributes her weight loss to dieting and

3  thyroid medication.  AR 30.

4    With regard to side effects from medication, Plaintiff explained the Lasix makes her

5  urinate frequently, and also causes drowsiness throughout the day.  AR 34.  The drowsiness then

6  causes her difficulties in focus and concentration.  AR 34.  Additionally, Plaintiff naps everyday

7  for at least two hours.  AR 35.

8    Plaintiff lives with her eleven year old disabled daughter.  AR 36-37.  When asked how

9  she spends her day, Plaintiff indicated that after getting her daughter ready to walk to the bus

10  stop, she naps and tries to keep the apartment clean, doing a little work then taking a break, until

11  it is time to meet her daughter at the bus stop.  AR 37.  She cleans her shower using her shower

12  chair.  AR 37.  Plaintiff indicated that her breathing is so labored that after showering she must

13  take a break before getting dressed.  AR 37.  She does the grocery shopping, occasionally shops

14  for clothes or other necessities, and once in while will see a movie with her daughter.  AR 38.

15    VE Ferra classified Plaintiff's past work as follows: home attendant, medium and semi-

16  skilled with an SVP[3] of three; child care monitor, medium and semi-skilled with an SVP of three;

17  and file clerk, light and semi-skilled with an SVP of three.  AR 39.

18    The VE was asked to consider a hypothetical worker of Plaintiff's age, education and

19  work history, who could lift and carry twenty pounds occasionally and ten pounds frequently,

20  who could sit, stand or walk for six hours in an eight-hour day, and could occasionally balance,

21  stoop, kneel, crouch and crawl, but whom was to avoid concentrated exposure to pulmonary

22  irritants.  AR 39-40.  The VE indicated such an individual could perform Plaintiff's past relevant

23  work as a file clerk.  AR 40.

24    In a second hypothetical, the VE was asked to assume a hypothetical worker "with the

25  same vocational parameters" as previously noted, whom could lift and carry five pounds

26

27    [3]"SVP" refers to specific vocational preparation.

28    4

maximum, sit for two hours total, and stand or walk for thirty minutes total, who must avoid exposure to pulmonary irritants, must use the restroom fifteen to twenty times per day, must nap or take a rest break for approximately two hours a day, and whose medication will cause drowsiness and affect concentration. AR 40. VE Ferra testified that this hypothetical worker could not perform any of Plaintiff's past work, nor could the individual perform any work as it exists in the national economy. AR 40-41.

Plaintiff's counsel asked the VE to consider the same individual as posed in first hypothetical with an additional limitation to three unscheduled ten-minute breaks to accommodate breathing treatments; the VE indicated that such an individual would be unable to perform Plaintiff's past work or any work as it exists in the national economy. AR 41.

**Medical Record**

The entire medical record was reviewed by the Court. Relevant medical evidence will be referenced below if necessary in this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 11-17.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2005. AR 13. Further, the ALJ identified asthma, obesity, diabetes mellitus, and hypertension as severe impairments. AR 13-14. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments do not, individually or in combination, meet or exceed any of the listed impairments. AR 14.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, to sit, stand, and walk for six hours in an eight-hour work day, and to occasionally balance, stoop, kneel, crouch and crawl; she was to avoid exposure to pulmonary irritants. AR 14-16.

1    Next, the ALJ determined that Plaintiff could perform her past relevant work as a file

2    clerk.  AR 16.  Therefore, the ALJ determined Plaintiff was not disabled.  AR 16-17.

3                                            **SCOPE OF REVIEW**

4    Congress has provided a limited scope of judicial review of the Commissioner's decision

5    to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

6    this Court must determine whether the decision of the Commissioner is supported by substantial

7    evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

8    *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

9    *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

10   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

11   401.  The record as a whole must be considered, weighing both the evidence that supports and

12   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

13   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

14   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

15   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

16   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

17   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

18   Cir. 1987).

19                                              **REVIEW**

20   In order to qualify for benefits, a claimant must establish that he is unable to engage in

21   substantial gainful activity due to a medically determinable physical or mental impairment which

22   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

23   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

24   such severity that he is not only unable to do her previous work, but cannot, considering his age,

25   education, and work experience, engage in any other kind of substantial gainful work which

26   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

27

28                                                  6

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff generally argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error.

## DISCUSSION[4]

### *Sequential Evaluation*

Pursuant to Title 42 of the United States Code section 1382c(a)(3)(A), in order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically-determinable physical or mental impairment which has lasted, or which can be expected to last, for a continuous period of not less than twelve months. The evidence must show that the claimant has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d at 1456.

In an effort to achieve uniformity of decisions, the Secretary has promulgated regulations which contain, inter alia, a five-step sequential analysis to be employed by the ALJ in determining whether a claimant is physically or mentally disabled. *See* 20 C.F.R. §§ 404.1520(a)-(e) & 416.920(a)-(g). If, during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a). This five-step analysis can be summarized as follows: (1) determination of whether the claimant is engaged in substantial gainful activity; if so engaged, the claimant is not presumed disabled and the analysis ends; (2) if not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if not, the claimant is not presumed disabled and the analysis ends; (3) if the claimant has a severe impairment,

---

[4]The Court carefully reviewed and considered all of the pleadings, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or pleading is not to be construed that this Court did not consider the argument or pleading.

determination of whether any such severe impairment meets any of the impairments listed in the

regulations;[5] if so, the claimant is disabled and the analysis ends;[6] (4) if the claimant's

impairment is not listed, determination of whether the impairment prevents the claimant from

performing his or her past work;[7] if not, the claimant is not presumed disabled and the analysis

ends; and (5) if the impairment prevents the claimant from performing his or her past work,

determination of whether the claimant can engage in other types of substantial gainful work that

exist in the national economy;[8] if so, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the

meaning of the Social Security Act. *Terry v. Sullivan*, 903 F.2d at 1275. The claimant establishes

a prima facie case of disability by showing that a physical or mental impairment prevents him or

her from engaging in his or her previous occupation (steps 1 through 4 in the analysis outlined

above). *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) &

416.920(f). However, once the claimant establishes a prima facie case of disability, the burden

of going forward with the evidence shifts to the Secretary. *Hammock v. Bowen*, 867 F.2d 1209

(9th Cir. 1989). The Secretary bears the burden of establishing the existence of alternative jobs

available to the claimant, given his or her age, education, and medical-vocational background

(step 5 in the analysis outlined above). In an appropriate case, the Secretary may meet this

---

[5]*See* 20 C.F.R. Part 404, Subpt. P, App. 1 ("Appendix 1").

[6]If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)); *Key v. Heckler*, 754 F.2d 1545, 1548 (9th Cir. 1985).

[7]At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity for work. *Villa v. Heckler*, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945 (a).

[8]At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education, and past work experience. 20 C.F.R. §§ 404.1520(f) & 416.920(f).

burden through application of the medical-vocational guidelines set forth in the regulations.[9]  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Appendix 2"); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).  If the guidelines do not accurately describe a claimant's limitations, the Secretary may not rely on them alone to show availability of jobs for the claimant.  *Desrosiers v. Secretary*, 846 F.2d 573 (9th Cir. 1988).[10]

### *Diagnosis versus Disability*

Initially, this Court notes that to the degree Plaintiff argues that the various diagnoses by her treating physicians or other physicians establish she is disabled, she is mistaken.

The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d at 1549.  Therefore, despite Plaintiff's assertions that she has been diagnosed with congestive heart failure, chronic obstructive pulmonary disease, degenerative disk disease, and sleep apnea, these diagnoses alone do not entitle her to a finding of disability.

It is well settled that the presence of diabetes does not necessarily equate to a finding that a claimant is disabled.  *Wilson v. Chater*, 76 F.3d 238 (8th Cir. 1996).  In fact, if proper controlling methods such as dietary, exercise and medications can control a person's hyperglycemia, the ALJ can properly determine that it is not disabling.  *Holguin v. Harris*, 480 F.Supp. 1171 (N.D. Cal. 1979); *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993); 20 C.F.R.§ 404.1530 (1996).

---

[9]For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

[10]However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of the guidelines.  Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Secretary will be required to obtain expert vocational testimony regarding the availability of other work.  *See, e.g.*, *Polny v. Bowen,* 864 F.2d 661 (9th Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); and *Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985).  Pain has been recognized as a non-exertional limitation which can significantly limit one's ability to perform basic work skills.  *See Perminter,* 765 F.2d at 872.

Neither does the fact Plaintiff has been provided with a disabled placard from the California Department of Motor Vehicles ("DMV") equate to a finding of disability for Social Security purposes.  The issuance of a placard is not determinative on the issue of disability because the DMV utilizes different criteria for issuing disabled placards which cannot be interchanged with the guidelines set forth by the Social Security Administration.  *See Perry v. Astrue*, 2011 WL 3903121 at *16 (N.D. Cal. Sept. 6, 2011); *Beauchamp v. Astrue*, 2010 WL 2925431 at *12 (S.D. Cal. Apr. 23, 2010).

### Step Two Findings

Plaintiff argues the ALJ did not find all of her impairments to be severe impairments, and thus, the ALJ erred.  More particularly, she claims congestive heart failure, chronic obstructive pulmonary disease, degenerative disk disease and sleep apnea should have been considered to be severe.

At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that does not significantly limit the claimant's physical and mental ability to do basic work activities.  An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.  An overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  Further, the ALJ must consider the combined effect of all of the claimant's impairments on his or her ability to function, without regard to whether each alone is sufficiently severe. 42 U.S.C. § 423(d)(2)(B).  The combined effect "shall be considered throughout the disability determination process." *Id.*  The adjudicator's role at step two is further explained by the Social Security Ruling ("SSR"):

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28.

Here, ALJ Berry identified Plaintiff's severe impairments as asthma, obesity, diabetes mellitus, and hypertension.  AR 13.  However, the ALJ also determined that Plaintiff's other conditions were non-severe.  He reasoned as follows:

> The limited medical evidence establishes that the claimant has been diagnosed and treated for asthma, diabetes mellitus, and hypertension.  She has been managed with medications.  In November 2006, chest x-rays showed increased density in the lung bases.
> In May 2007, Dr. Emanuel Dozier consultatively examined the claimant. The claimant complained of a five-year history of chronic obstructive pulmonary disease with coughing, wheezing, and shortness of breath.  She said she had difficulty walking more than 100 feet and used an inhaler and nebulizer, but had no hospitalizations.  She also reported a history of diabetes on insulin with no history of hospitalizations.  On physical examination, the claimant was observed to walk with a normal gait with no signs of pain, ataxia, or shortness of breath. She was able to sit without discomfort, and transfer on and off the examination table without assistance.  Her weight was 310 pounds, and her height was 5'7".  Motor strength was 5/5 in upper and lower extremities with 5/5 bilateral grip strength.  There was increased AP diameter in the chest/lungs with rhonchi and expiratory wheezing, but there was no use of accessory muscles. Cardiovascularly, rate and rhythm were regular, and there were no gallops, rubs, or murmurs.  The point of maximal impulse was not displaced, and there was no edema.  Dr. Dozier diagnosed chronic obstructive pulmonary disease, diabetes, and morbid obesity.
> In October 2008, lumbar spine x-rays showed scoliosis concave to the right centered at the L3-4 level with right lateral disc narrowing and spondylosis. Pelvis x-rays were normal.

11

AR 13-14, internal citations omitted.  Clearly ALJ Berry considered all of Plaintiff's

impairments, yet determined that congestive heart failure, chronic obstructive pulmonary disease,

degenerative disk disease and sleep apnea were not severe based upon the medical evidence.  In

part, the ALJ noted that these conditions were reported by Plaintiff to Dr. Dozier, rather than

established by medical evidence leading to a finding of severity.  A claimant's own statement of

symptoms alone will not suffice.  *See* 20 C.F.R. §§ 404.1508; 416.908.  Additionally, the ALJ's

reference to the October 2008 x-rays noted the changes in the lumbar spine, however, the mere

presence of degenerative disc disease does not equate to a severe impairment.  Degenerative disc

disease "is not really a disease but a term used to describe the normal changes in your spinal

discs as you age."  http://www.webmd.com/back-pain/tc/degenerative-disc-disease-topic-

overview.  Again, by virtue of a diagnosis, Plaintiff is not necessarily disabled.

In sum, this Court finds that ALJ Berry considered the medical evidence available to him

and properly determined these conditions were not severe.  Therefore, the ALJ's findings are

supported by substantial evidence and are free of legal error.

### *Medical Opinion Evidence*

To the degree Plaintiff is understood to argue that the ALJ did not properly weigh the

medical evidence, she is mistaken.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

physicians).  As a general rule, more weight should be given to the opinion of a treating source

than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d at 647 .

At least where the treating doctor's opinion is not contradicted by another doctor, it may be

rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th

Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing "specific and legitimate reasons"

supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450.  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

The opinions of nonexamining physicians are substantial evidence where they are supported by clinical findings and objective tests. *See Magallanes v. Bowen*, 881 F.2d at 751.

Here, ALJ Berry explained as follows:

As for the opinion evidence, the State Agency physicians concluded that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently,

13

sit, stand, and walk for six hours in an 8-hour day, occasionally climb, balance, stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  Dr. Dozier opined the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand, and walk for six hours and frequently stoop and crouch.  I give great weight to these opinions as they are most consistent with the limited medical record.

An unidentified physician's assistant for Dr. Tiwana reported in January 2008 that the claimant did not have any exertional limitations, and could occasionally climb, balance, stoop, and never kneel, crouch, and crawl, was limited in reaching, handling, fingering, and feeling, and should avoid even moderate exposure to fumes, [odors], dusts, gases, poor ventilation, and hazardous machinery and heights.  In March 2008, that same physician's assistant reported that the claimant could lift and carry less than 10 pounds, stand and walk for less than two hours in an 8-hour workday, sit less than six hours in an 8-hour workday, was limited in pushing and pulling with the upper and lower extremities, occasionally climb, balance, and stoop, and never kneel, crouch and crawl, limited reaching, handling, fingering, and feeling, limited far acuity, depth perception, accommodation, color vision, field of vision, and should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazardous machinery and heights.  I give little weight to these limitations as the signer was unidentifiable and even so, is not an acceptable medical source.  Additionally, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.

AR 15-16, internal citations omitted.

If Plaintiff is arguing that the ALJ was obligated to refer to each and every separate finding made by a physician, Plaintiff is incorrect.  The ALJ is not required to comment on every detail in every report.  As noted in *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984), "[t]he Secretary . . . need not discuss all evidence presented to [him]. Rather, []he must explain why 'significant probative evidence has been rejected.'"

Here, the ALJ afforded greater weight to the examining and reviewing physicians because the opinions were based upon examinations and objective medical evidence.  While Dr. Tiwana is Plaintiff's treating physician, the opinions in the record were prepared by a physician's assistant.  As pointed out by the ALJ, a physician's assistant is an "other source," or not an acceptable medical source for purposes of the Social Security Regulations: "Medical sources who are not 'acceptable medical sources,' [include] nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . .." SSR 06-03p.

1    Notably too, Dr. Dozier's opinion is substantial evidence because it rests on the doctor's

2    own independent examination of Plaintiff.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

3    2001).

4    Following review of this record, this Court finds the ALJ provided specific and legitimate

5    reasons for affording the state agency and examining physician opinions greater weight.

6    Therefore, ALJ Berry did not err and his findings are supported by substantial evidence.

7    ***SSR 02-1p***

8    Plaintiff refers to SSR 02-1p in her opening brief.  Out of an abundance of caution, this

9    Court will construe the reference to be an argument that the ALJ did not properly consider

10   obesity.

11   Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation

12   process, including when determining an individual's RFC.  "The combined effects of obesity

13   with other impairments may be greater than might be expected without obesity."  SSR 02-1p.

14   The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in

15   determining RFC based on the information in the case record.  *Burch v. Barnhart*, 400 F.3d 676,

16   683 (9th Cir. 2005).  In *Burch*, the ALJ did not find that the claimant's obesity, in combination

17   with her other impairments, met a Listing.  *Burch*, 400 F.3d at 682-683.  The court held that this

18   was not reversible error, as it is the claimant's burden to prove that she has an impairment that

19   meets or equals the criteria of an impairment in the Listings.  *Id.* at 683.  An "ALJ is not required

20   to discuss the combined effects of a claimant's impairments or compare them to any listing in an

21   equivalency determination, unless the claimant presents evidence in an effort to establish

22   equivalence."  *Id.*

23   In this case, ALJ Berry, like the ALJ in *Burch*, did not find Plaintiff's obesity, in

24   combination with her other impairments, met a listing impairment.  AR 14.  Nevertheless, ALJ

25   Berry considered Plaintiff's obesity in determining RFC:

26       The claimant's weight has ranged from 276 pounds to 331 pounds.  The
         claimant[] stated that her weight limited most of her activities and abilities to do
27

28                                              15

many things, such as standing for a period of time, and walking from her house to her car. She stated that she got exhausted when she took a shower. It is also noted that no doctor has imposed limitation due to claimant's weight. It is also noted that I did consider the claimant's weight in arriving at the residual functional capacity.

AR 15. Here, ALJ Berry complied with the relevant authority. Moreover, this Court finds that his consideration of obesity in the RFC finding is reflected by the limitation to occasional stooping, kneeling, crouching, and crawling. AR 14. Therefore, his determination is supported by substantial evidence and is free of legal error.

### Hypothetical Questions & VE Testimony

Plaintiff appears to argue that the ALJ's hypothetical questions as posed to the VE were erroneous.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . .." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422. However, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Here, the ALJ posed two hypothetical questions to VE Ferra. AR 39-41. The ALJ's first hypothetical presented VE Ferra with those limitations he found to be credible and supported by the evidence; in other words, the hypothetical comported with the findings of the state agency and examining physicians. *Compare* AR 39-40 to AR 198-203. The second hypothetical is plainly based upon Plaintiff's own testimony. ALJ Berry asked the VE two hypothetical questions: one based upon the medical opinion and evidence, and the other based upon Plaintiff's testimony. Yet, the ALJ was not *required* to accept Plaintiff's testimony as credible, nor was he required to accept the VE's testimony that no work was available for such an individual.

1    Hence, ALJ Berry complied with the regulations and law.  His findings are supported by

2    substantial evidence and are free of legal error.

3        ***Credibility Findings***

4        In her reply brief, Plaintiff contends the ALJ erred with regard to his analysis of her

5    testimony.

6        A two step analysis applies at the administrative level when considering a claimant's

7    subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the

8    claimant must produce objective medical evidence of an impairment that could reasonably be

9    expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the

10   claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

11   claimant's testimony regarding the severity of his symptoms only if he makes specific findings

12   that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which

13   testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

14   *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack

15   of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

16   impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

17   evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the

18   individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

19   statements and reasons for that weight").

20       An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

21   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

22   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

23   testimony by the claimant that appears less than candid, unexplained or inadequately explained

24   failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

25   activities, claimant's work record, or the observations of treating and examining physicians.

26   *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not 'required to

27

28                                                    17

believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of asthma, obesity, diabetes mellitus and hypertension. AR 13. ALJ Berry found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence, and limiting effects of these symptoms are not entirely credible." AR 15. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601. It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d at 755). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Specifically here, ALJ Berry made the following findings:

> The claimant reported that she could not walk from her car to the house without being exhausted or having shortness of breath. The claimant stated that she became unable to work on November 30, 2005, but stopped working on November 12, 2005, because she was no longer needed. She stated she had problems walking, standing, sitting, lifting, bending, and stooping beginning August 2007. She stated she could care for her personal needs, but was unable to do household duties and had problems standing for long periods of time.
> The claimant testified that she last worked in 2005. She stated that she uses an inhaler and nebulizer three to four times a day. She stated that walking aggravates her breathing. She said she has lost weight in the last couple of years

and currently weighs 280 pounds. She testified that she has numbness and weakness in her arms and has trouble squeezing. She stated she can only lift and carry five pounds, stand and walk for five minutes, and sit for two hours. She said she naps every day for a couple of hours. She testified that she lives with her 11-year-old daughter who is disabled. She gets her ready to catch the bus every day, cleans, shops, and goes to movies.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. In November 2006, the claimant was evaluated for chest pain with shortness and breath and worsening health, but she [] had no primary care physician. She has had no surgeries and in January 2007, it was reported that her hypertension had been untreated for years, and she was not taking any medication. Once she was placed on medication, her condition improved.

The claimant's weight has ranged from 276 pounds to 331 pounds. The claimant[] stated that her weight limited most of her activities and abilities to do many things, such as standing for a period of time, and walking from her house to her car. She stated that she got exhausted when she took a shower. It is also noted that no doctor has imposed limitation due to claimant's weight.

AR 15, internal citations omitted. The ALJ then went on to point out that the state agency physicians and examining physician found Plaintiff capable of work.

ALJ Berry found Plaintiff not entirely credible because the objective medical evidence did not support her assertions. This is a proper consideration. *See* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function). Additionally, the ALJ noted that Plaintiff's various conditions are controlled with medications. Again, this is a proper consideration for purposes of determining credibility. *See e.g., Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence

1  supports a rejection of a claimant's credibility; no medical treatment or a conservative level of

2  medical treatment has been found to suggest a lower level of pain and functional limitations).

3        Finally, it is not this Court's role to redetermine Plaintiff's credibility de novo.  Although

4  evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to

5  the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must

6  uphold the ALJ's decision where the evidence is susceptible to more than one rational

7  interpretation.  *Burch v. Barnhart*, 400 F.3d at 680-81.

8        Hence, ALJ Berry did not err in finding Plaintiff's testimony regarding the intensity,

9  persistence and limiting effects of her symptoms to be not entirely credible.  The findings are

10 specific and justify his decision.  His findings are supported by substantial evidence and are free

11 of legal error.

12       ***New Medical Evidence***

13       Plaintiff has attached additional medical evidence to her briefing.  Defendant contends

14 some of the evidence is duplicative of evidence already in the record, but to the degree the

15 evidence is in fact new, it is improper.

16       Pursuant to the provisions of Title 42 of the United States Code section 405(g), a case

17 may be remanded to the Secretary if the new evidence submitted is material, and there is good

18 cause for the failure to incorporate it into the record.  In order to be "material," the new evidence

19 must be probative of the claimant's condition as it existed during the relevant time period -- on or

20 before the administrative hearing.  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d

21 509, 511 (9th Cir. 1987).  In addition, the claimant must prove to the reviewing court's

22 satisfaction that there exists a "reasonable possibility that the new evidence would have changed

23 the outcome of the Secretary's determination had it been before him."  *Booz v. Secretary of*

24 *Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).  The good cause requirement

25 is satisfied if the claimant could not have obtained the medical evidence at the time of the

26

27

28                                          20

1   administrative proceeding, even though the evidence surfaces after the Secretary's final decision.

2   *See Embry v. Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988); *Booz*, *supra*, 734 F.2d at 1380.

3         In this case, Plaintiff contends the "new evidence [] supports the evidence already

4   contained in the record" and "supports [her] continuing treatment for impairments." (Doc. 23 at

5   6.)

6         As to evidence that is duplicative, there is no reasonable possibility that these duplicate

7   medical records would have changed the ALJ's findings.  *Booz v. Secretary of Health and*

8   *Human Services*, 734 F.2d at 1380.  Additionally, to the degree the new evidence is dated after

9   July 22, 2009 - the date of the ALJ's decision - it is outside the relevant time period, is therefore

10  not material, and thus cannot properly be considered.  *Sanchez v. Secretary of Health and Human*

11  *Services*, 812 F.2d at 511.

12        Simply submitting a more favorable medical report obtained well after the ALJ's decision

13  does not establish good cause.  *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990).  Rather, the

14  claimant must establish good cause for not seeking the expert's opinion prior to the denial of the

15  claim.  *Id.*

16        Finally, as correctly noted by the Commissioner, where a claimant believes that new

17  evidence supports a claim for disability, the proper procedure for submitting the evidence is in

18  the context of a new application for benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir.

19  2000).  Therefore, Plaintiff is certainly entitled to submit a new application for benefits.  As it

20  stands however, this evidence does not support a reversal of the ALJ's July 2009 determination.

21

22

23

24

25

26

27

28                                        21

1

**CONCLUSION**

2        Based on the foregoing, the Court finds that the ALJ's decision is supported by

3   substantial evidence in the record as a whole and is based on proper legal standards.

4   Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

5   Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

6   favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

7   Nancy Lynn Berrigan.

8

9

10        IT IS SO ORDERED.

11   **Dated:** __October 3, 2011__                    _____**/s/ Gary S. Austin**_____
                                                    UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    22